Dobbins, Howard & Harris, San Antonio, for appellant.

Glosserman, Alter, Smith & Rosenheim, San Antonio, for appellee.

**UVALDE ROCK ASPHALT COMPANY, Appellant,**

v.

**CONSOLIDATED CARPET CORPORATION, Appellee.**

**No. 7164.**

Court of Civil Appeals of Texas, Beaumont.

July 16, 1970.

Rehearing Denied Sept. 10, 1970.

PARKER, Chief Justice.

Uvalde Rock Asphalt Company, a Texas corporation, sued Consolidated Carpet Corporation, an Arizona corporation, upon a sworn account for $6,488.50, together with interest and attorney's fees. Consolidated Carpet Corporation made its special appearance pursuant to Rule 120a of the Texas Rules of Civil Procedure for the sole purpose of presenting its objection to the jurisdiction of the District Court of Bexar County, Texas, over the person of defendant. The court found that Consolidated Carpet Corporation was not amenable to process issued by the courts of this state, sustained defendant's special appearance and dismissed the cause for want of jurisdiction of the defendant's person. Uvalde Rock Asphalt Company has appealed. Herein it will be called "appellant" or "Uvalde." Consolidated Carpet Corporation will be called "appellee" or "Carpet Corporation."

Carpet Corporation relies upon Sun-X International Company v. Witt, 413 S.W.2d 761 (Texarkana Civ.App., 1967, error ref., n. r. e.) to sustain its position that it is not amenable to in personam jurisdiction in Texas, Article 2031b, Vernon's Ann.Civ.St. On pages 764 and 765 of Sun-X, Justice Fanning stated:

"* * * we think it can be said that it is now the law that there are three basic factors which should coincide if jurisdiction over a non-resident defendant is to be entertained, to-wit: (1) The non-resident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. In this connection see O'Brien v. Lanpar Co., 399 S.W.2d 340 (Tex.1966)."

The case of O'Brien v. Lanpar Company, 399 S.W.2d 340 (Tex.Sup., 1966) would seem to control the decision in the instant case since the above quotation from the Sun-X Case is lifted from Justice Pope's opinion therein. This 1966 opinion in *Lanpar* by the Supreme Court of this State represents the current thinking. There on page 342 it was said:

"The Supreme Court of the United States in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ushered in the concept that a state could assert in personam jurisdiction over a foreign corporation, assuming proper notice is given, if the foreign corporation has had certain minimum contacts with the state * * *"

This is the third basic requirement mentioned in the quotation from the Sun-X Case.

Justice Pope in *Lanpar* [399 S.W.2d at p. 342] further held:

"The Supreme Court reasserted its minimum contacts test in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). It there held that a Texas court should have given full faith and credit to a California judgment against a nonresident Texas corporation. Sufficient contacts with[in] the forum existed because the defendant Texas corporation mailed a reinsurance certificate to a California resident in that state. The California resident accepted the offer and thereafter paid his premiums by mail from California. The Court wrote:

"'* * * In a continuing process of evolution this Court accepted and then abandoned "consent," "doing business," and "presence" as the standard for measuring the extent of state judicial power over such corporations. See Henderson, The Position of Foreign Corporations in American Constitutional Law, c. V. More recently in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the Court decided that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id., 326 U.S. at 316, 66 S.Ct. at page 158.'" [Emphasis by Supreme Court]

In the instant case stronger purposeful acts were made by Consolidated Carpet

Corporation within the forum of Texas than in the McGee Case, supra.

Uvalde solicited Carpet Corporation in Arizona to become one of its "authorized wholesalers." Uvalde is a Texas corporation. Carpet Corporation is an Arizona corporation maintaining no regular place of business within the State of Texas, upon whom service of process might be had in causes of action arising against it from "doing business in the State of Texas" as that term is defined by Article 2031b, V.A.C.S. Service was had upon Carpet Corporation under the provisions of said Article 2031b. An authorized "wholesaler" contract was executed by appellee in the State of Arizona, mailed to appellant in Texas and there accepted and mailed back to appellee in Arizona. This authorized "wholesaler" agreement between the parties, dated May 17, 1968, contains a paragraph reading:

"6. Authorized Wholesaler agrees that the terms conditions and provisions contained in Manufacturer's then current 'Approved Flooring Dealers Price List' and in Manufacturer's then current 'Price Information for Authorized Wholesalers of AZROCK Floor Products' shall apply to all transactions between Manufacturer and Authorized Wholesaler, except as expressly provided herein, or where such terms, conditions or provision are inconsistent herewith, and *agrees to pay promptly at the general offices of the Manuafcturer in San Antonio, Texas, all invoices for goods purchased."* [Emphasis supplied]

On May 17, 1968, Carpet Corporation order from Uvalde its initial stock of merchandise and promotional material. The total invoice price for such initial order was $7,139.72. This amount was in accordance with the terms, conditions and provisions of appellant's price list which under the provisions of paragraph 6 of the "Authorized Wholesalers" contract were to govern all shipments. The merchandise and promotional materials comprising the

first order were shipped F.O.B. Houston, Texas, addressed to the appellee in Tempe, Arizona, with payment to be in San Antonio, Texas, according to the authorized wholesalers contract. All subsequent orders were shipped to Arizona, except five which were placed by Carpet Corporation in the period between May 29, 1968 and July 31, 1968. Each of these latter shipments was ordered by Carpet Corporation to be shipped from Uvalde's plant in Houston, F.O.B. with freight pre-paid to the several destinations in the State of Texas, indicated below:

1. To Apache Flooring Company at Laredo Air Force Base in Texas;

2. To Apache Flooring Company in care of the Naval Auxiliary Air Station at Kingsville, Texas;

3. To Apache Flooring Company at the Tyler State Bank, Tyler, Texas;

4. To Apache Flooring Company at Randolph Air Force Base at San Antonio, Texas;

5. To Apache Flooring Company at Witchita Falls State Hospital at Witchita Falls, Texas.

The invoice price for initial order delivered to appellee in Arizona amounted to $7,139.72. The invoice on orders delivered in Texas, billed in accordance with the contract, total approximately $2,100.00. The total charges for all merchandise and advertising matter purchased from Uvalde by Carpet Corporation was $10,012.23, and the total amount paid was $3,400.73, all being clearly shown on the sworn account. The amount due and owing, according to the sworn account, when the suit was filed, was $6,488.50.

Carpet Corporation made two payments to Uvalde in Texas in accordance with the contract. It is our opinion that the payment of $3,473.73 in Texas determined that the foreign corporation, Carpet Corporation, had sufficient contact, ties or relations with the forum, and participated in the

kind of activities in Texas so as to make it subject to the jurisdiction of the State of Texas. Such contacts, minimal though they may be on the part of Carpet Corporation, do not offend the traditional notions of fair play and substantial justice. We think such contacts are stronger in arriving at the above conclusion than they are in the McGee v. International Life Insurance Co. Case, supra.

In *McGee,* 355 U.S. at p. 222, 78 S.Ct. at p. 200, it is stated that the insurance company never had an officer or agent in California:

"And so far as the record before us shows, respondent has never solicited or done any insurance business in California apart from the policy involved here."

Then on page 223 the U.S. Supreme Court, on page 201 of 78 S.Ct. stated:

"It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims."

In other jurisdictions there are cases which interpret the McGee Case as being limited to insurance contracts or contracts in which a state has a unique interest. See: Webb v. Stanker & Galetto, Inc., 84 N.J.Super. 178, 201 A.2d 387, cert. den. 380 U.S. 907, 13 L.Ed.2d 795, 85 S.Ct. 888 (1964) and Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583 (C.A.2, 1965).

We are not persuaded the Supreme Court in the McGee Case was placing more emphasis on the nature of the contract as one of insurance than it would place upon any contract where a resident of the state is injured under contracts of similar nature whether such resident be a natural person or a corporation.

From the discussion and decisions cited in 27 A.L.R.2d at pages 415 and 416 under "Jurisdiction Over Nonresident" this court considers that decisions generally in accord with the present trend uphold the contact existing in the instant case as being sufficient to maintain jurisdiction in Texas.

In Uvalde's brief it is stated that:

"* * * the usual inquiry regarding the contractual relations of the parties and the physical activities of the nonresident defendants with respect thereto must be extended by asking, IS THE KIND OF ACTIVITY ENGAGED IN BY THE NONRESIDENT DEFENDANT CALCULATED TO EXTRACT PROFITS FROM THE MARKETS OF THE FORUM STATE?" [Emphasis from brief]

In the instant case Carpet Corporation engaged in an activity calculated to extract profits from the markets of the State of Texas by reason of its wholesalers contract with Uvalde. This enabled Carpet Corporation to have the benefit of moving these goods to its customers by short-haul intra-state rates from a Texas manufacturer to the ultimate Texas consumers thereby saving substantial freight charges. Looking at the substance of this wholesalers contract in the light of what transpired, it is apparent that Carpet Corporation's activities in Texas satisfy the Federal constitutional requirements and the requirements of the State of Texas to maintain jurisdiction within the State of Texas and we so hold.

The judgment of the trial court is reversed and the case remanded.