PLAINS BAG & BAGGING COMPANY, Appellant,

v.

GOLBY BAG COMPANY, Appellee.

No. 07–81–0170–CV.

Court of Appeals of Texas, Amarillo.

Nov. 29, 1982.

Smith, Baker, Field & Clifford, Inc., Deborah Brown, Lubbock, for appellant.

McWhorter, Cobb & Johnson, Owen W. McWhorter, Jr., Lubbock, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

COUNTISS, Justice.

The single question presented by this case is whether the trial court had personal jurisdiction of a non-resident defendant. The trial court said it did not, and dismissed the case. We conclude that it did, however, and reverse and remand.

The case is before us on stipulated facts. Appellant Plains Bag & Bagging Company (hereafter Texas Bag), plaintiff below, is a partnership of two Texas corporations with its principal place of business in Lubbock, Texas. Appellee Golby Bag Company (hereafter Oregon Bag), defendant below, is an Oregon corporation with its principal place of business in Portland, Oregon. In early 1979, by a trade journal advertisement, Oregon Bag solicited offers for misprinted potato and onion bags it wanted to sell. Texas Bag saw the ad and, from Lubbock, telephoned Oregon Bag in Portland. The parties discussed the matter, Oregon Bag made certain representations about the nature of the bags and the parties agreed on a contract. As later confirmed by letters from Texas Bag to Oregon Bag, Texas Bag purchased Oregon Bag's "entire accumulation" of certain kinds of bags at a fixed price per bag. Texas Bag sent a $25,000 check to apply on the purchase price with the understanding that "if the shipment amounts to more than $25,000.00 we will send you an additional check, and if it comes out to less than $25,000.00 you will return the difference."

After Texas Bag sent the check from Lubbock to Portland, Oregon Bag shipped the bags, free on board Portland, to Lubbock. Soon after Texas Bag received the bags, it notified Oregon Bag that those made of burlap were unacceptable under the contract and it sent them back. Oregon Bag then sent Texas Bag a check for $10,000. Later, Texas Bag decided the rest of the bags were unacceptable and sent them back also. When Oregon Bag did not return the balance of the $25,000, this suit was filed in a Texas district court. Texas Bag alleged causes of action for breach of contract, fraudulent misrepresentation and deceptive trade practices and sought recovery for damages, attorneys fees, interest and costs. After the Texas Secretary of State was served under the Texas long-arm statute, Tex.Rev.Civ.Stat.Ann. art. 2031b (Vernon Supp.1982), (hereafter, art. 2031b), Oregon Bag responded to the suit with a special appearance under Tex.R.Civ.Pro. 120a, alleging that it was not amenable to service by a Texas court because it did not have those minimum contacts with Texas that are constitutionally necessary to support personal jurisdiction. The trial court agreed with Oregon Bag and dismissed the suit.

In this court, Texas Bag presents five points of error, the substance of which are

that, under the applicable law, the evidence demonstrates its right to sue Oregon Bag in Texas. We will resolve the points collectively by a two-part analysis: (1) is Oregon Bag amenable to process under Texas law, and (2) if so, does application of Texas law to these facts violate the due process clause of the United States Constitution? *

■ The first inquiry is answered by article 2031b. Under that article, any foreign corporation doing business in Texas is amenable to process by a Texas court through service on either its designated agent or, if none, the Secretary of State. "Doing business," as pertinent here, is defined in section 4 of the article as follows:

> Sec. 4. For the purpose of this Act, ... any foreign corporation ... shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State,....

It is obvious that, under the foregoing statute, Oregon Bag was doing business in Texas. Under the stipulated facts, it entered into a contract with a resident of Texas. That contract was partially performable in Texas, because payment was mailed from Texas, the bags were shipped to Texas and the total consideration to be paid was to be determined in Texas when the bags arrived here. Thus, Oregon Bag was amenable to service under Texas law. *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977).

■ The second inquiry, then, is whether application of art. 2031b to these facts violates the due process clause of the United States Constitution. If a defendant has received proper notice, "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimal contacts with it such that maintenance of the suit does not offend 'traditional notions of fair play

and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Application of the constitutional standard to facts comparable to ours is illustrated by *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In that case, a Texas insurance company acquired a life insurance policy on a California resident. From Texas, it mailed a reinsurance certificate to the insured in California and received premium payments mailed by him from California to Texas. Those were the company's only contacts with California. When the insured died and the company denied liability, his beneficiary and mother, Lulu McGee, sued the Texas company in California and served it in Texas under a California long-arm statute. Concluding that the California court acquired in personam jurisdiction of the insurance company by service under the statute, the U.S. Supreme Court reiterated the above quoted principal from *International Shoe* and observed that it is "sufficient for purposes of due process that the suit was based on a contract which had a substantial connection with that State." *McGee, supra,* at 223, 78 S.Ct. at 201. The same principles have recently been restated in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Consistent with the foregoing principles, Texas has constructed a three element test, stated in *O'Brien v. Lanpar Company,* 399 S.W.2d 340, 342 (Tex.1966), and recently reiterated in *Hall v. Helicopteros Nacionales De Colombia,* 638 S.W.2d 870, 872 (Tex.1982), to determine whether due process is satisfied:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;
>
> (2) the cause of action must arise from, or be connected with, such act or transaction; and

---

* The five points specifically attack the findings and conclusions of the trial court concerning (1) Oregon Bag's contacts with Texas; (2) the place where the contract was performed; (3)

the non-commission of a tort in Texas by Oregon Bag; and (4) and (5) the unreasonableness of requiring Oregon Bag to defend this suit in Texas.

(3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

When the foregoing elements are aligned with the evidence in this case, it is apparent that due process is not violated by requiring Oregon Bag to defend this suit in Texas. Pertinent to the first element, it contracted with a Texas resident, who mailed $25,000 to it from Texas. It made representations to the Texas resident about the bags and shipped the bags to Texas with the understanding that the total purchase price was to be determined after the bags arrived in this state. Also, it mailed $10,000 back to Texas after the first group of bags was returned to it from Texas. Thus, Oregon Bag purposefully engaged in numerous acts in the forum state.

There can be little argument about the second element because it is obvious from the pleadings and evidence that the causes of action plead by Texas Bag arise from and are connected with the events described in the foregoing paragraph.

The central theme of the third element, which is that assumption of in personam jurisdiction does not offend traditional notions of fair play and substantial justice, is taken verbatim from the U.S. Supreme Court cases discussed above and was the pivot point upon which the *McGee* case turned. If due process is not offended when the Texas company sued in California by Lulu McGee did nothing more than insure a California resident, mail the reinsurance certificate to him and receive premiums from him, it clearly is not offended under the stipulated facts of this case. Like the insurance company, Oregon Bag entered into a contract with a Texas resident, sent the subject matter of that contract to Texas and received money from Texas. We conclude, therefore, that under the constitutional test, Oregon Bag had sufficient minimum contacts with Texas to subject it to the in personam jurisdiction of our courts.

The foregoing discussion disposes of Oregon Bag's primary arguments that no contractual acts of performance contemplated by art. 2031b occurred in Texas and that due process is violated if the case is tried in Texas. Oregon Bag also argues, and the trial court found, that Oregon Bag has no agents, employees, bank account, place of business or property in Texas. As pointed out by Texas Bag, there is no evidence of any kind on those matters. Thus, while the trial court could have correctly found that there was no evidence of such activities in Texas, it could not correctly make an affirmative finding indicating that the absence of such activities was proved. The finding is immaterial, however. There was a comparable absence of such activities by the defendant in the *McGee* case, but that did not shield the insurance company from the California courts.

Our collective resolution of the issues moots point of error three and requires us to sustain points of error one, two, four and five, reverse the judgment of the trial court and remand the case for reinstatement on the docket of the trial court.