**Opinion issued February 25, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00625-CV

————————————

**GULF COAST INTERNATIONAL, L.L.C., Appellant**

**V.**

**THE RESEARCH CORPORATION
OF THE UNIVERSITY OF HAWAII, Appellee**

---

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Case No. 2014-05868**

---

## O P I N I O N

Gulf Coast International, a Louisiana manufacturer, supplier, and service provider with offices in Ohio and Houston, sued the Research Corporation of the University of Hawaii, an agency of the State of Hawaii with no offices, property, or employees in Texas, for breach of contract for overdue payments that Hawaii

Research owed Gulf Coast. After a hearing on Hawaii Research's special appearance challenging personal jurisdiction, the trial court dismissed Gulf Coast's lawsuit for lack of personal jurisdiction over Hawaii Research. Gulf Coast appeals the trial court's dismissal. We affirm.

**Background**

This case originated from a dispute over payments Hawaii Research owed Gulf Coast for repairs and other services provided by Gulf Coast for a single-hulled research vessel owned by the State of Hawaii. This vessel is both the primary support ship for a few submersibles and a multi-purpose oceanographic research vessel. It is comprised of over 1,050 square feet for four laboratories and over 3,000 square feet of exterior working space on the main deck. It is operated by the University of Hawaii out of its home port in Honolulu, Hawaii and has worked throughout the Pacific over the past two decades. Gulf Coast repaired the vessel at various docking sites in Hawaii, Costa Rica, Panama, and Oregon. Gulf Coast made no repairs in Texas. In fact, the vessel has never been to a Texas port or entered Texas waters.

**A.    Hawaii Research and Gulf Coast**

Hawaii Research is an agency of the State of Hawaii that, according to Leonard Ajifu, its Director of Finance and Project Administration, "support[s] the research and training programs of the University of Hawaii and . . .  enhance[s]

2

research, development, and training generally in Hawaii." On behalf of the University of Hawaii, Hawaii Research has contracted with Gulf Coast for various services and equipment for the vessel for over 20 years.

Gulf Coast is a Louisiana limited liability company. According to its filings with the Texas Secretary of State from 2010 to 2014, its principal place of business, its principal office, and a manufacturing plant are in Louisiana. In addition to the manufacturing plant and office in Louisiana, it has an office in Ohio and a facility in Houston. According to Jack Van Vleit, its Chief Operations Officer, the Houston location "serves as the primary base for the company's manufacturing and service operations" because of "its proximity to [Gulf Coast's] major suppliers, distributors, and customers and a talented labor pool . . . . " Hawaii Research dealt primarily with Gulf Coast's Houston office for the two contracts at dispute here.

**B.    First contract**

In the first contract, Hawaii Research accepted a Gulf Coast proposal to "upgrade certain electronics" on the vessel. According to Ajifu, the contract "contemplated that [Gulf Coast's] work on the [vessel] was to be performed outside the state of Texas." All of the work, according to Ajifu, took place outside of Texas; it took place on the vessel while it was "at sea or in port in Costa Rica, Panama, Oregon, and/or Hawaii." All of the parts and equipment installed on the

3

vessel under that contract were delivered to Hawaii Research outside of Texas. Hawaii Research did not send any payment to Texas under that contract. The contract's choice-of-law provision provided that Hawaii law governed. Hawaii Research sent the purchase order for this contract to Gulf Coast's Louisiana address, and Gulf Coast's corresponding invoices list only its Louisiana address.

## C.   Second contract

After the first contract was completed, the vessel's control systems still were not functioning properly. While Gulf Coast was upgrading the electronics under the first contract, it determined that various old, defective, and deteriorated electrical components on the vessel needed to be replaced so that the control system would function properly. Thus, Gulf Coast and Hawaii Research signed a second contract, in Hawaii, and agreed that Gulf Coast would replace that equipment as well. The second contract charged Hawaii Research for certain "components" that Gulf Coast would "furnish" to the vessel, for labor to install and train Hawaii Research on how to use the components, and expenses including airfare and lodging.

All of the work under the second contract also, according to Ajifu, "took place outside the state of Texas." Van Vliet started the design while aboard the vessel in Hawaii, and all of the parts and equipment were delivered to Hawaii Research in Hawaii. Although this second contract listed both Gulf Coast's

4

Louisiana and Texas offices, Hawaii Research sent its payments under this contract to Gulf Coast's Louisiana office.

Gulf Coast alleges that Hawaii Research has refused to pay Gulf Coast's outstanding invoices and charges under both contracts and sued it for breach of contract in a Texas court. Hawaii Research filed a special appearance and plea to the jurisdiction, arguing that, because it is a nonresident defendant with no purposeful ties to Texas, it is not subject to personal jurisdiction in Texas.

**D.     Hawaii Research's alleged contacts with Texas**

Gulf Coast, relying primarily on two affidavits of Van Vleit, argues that Hawaii Research is subject to specific personal jurisdiction in Texas for three reasons: (1) Hawaii Research sent a request for proposal to its main Gulf Coast contact in Houston, thereby soliciting business from Texas; (2) Gulf Coast did work for Hawaii Research out of its Houston office; and (3) the second contract passed title and the risk of loss to Hawaii Research in Houston.

Alternatively, Gulf Coast argues that Hawaii Research is subject to general personal jurisdiction in Texas because it hired other Texas service providers for work on the vessel during the past 20 years.

The trial court granted Hawaii Research's special appearance and dismissed the lawsuit for lack of jurisdiction. Gulf Coast appeals that dismissal.

## Standard of Review

We review an order granting or denying a special appearance de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *Lensing v. Card*, 417 S.W.3d 152, 155 (Tex. App.—Dallas 2013, no pet.). If the trial court does not issue findings of fact or conclusions of law, like has occurred in this case, we "imply all fact findings supported by the evidence that are necessary to support the ruling." *Lensing*, 417 S.W.3d at 155. We must "imply all findings of fact that are supported by the evidence in favor of the trial judge's ruling." *Id.* at 157.

In a special appearance, "the plaintiff bears the initial burden of pleading sufficient facts to bring a nonresident defendant within the reach of the Texas long-arm statute" that grants personal jurisdiction over a nonresident defendant. *Id.* at 155. Once the plaintiff meets that burden, the defendant must then "negate all bases of personal jurisdiction that have been pleaded by the plaintiff." *Id.* "In determining whether a defendant has negated all bases, we examine all the evidence in the record." *Fleischer v. Coffey*, 270 S.W.3d 334, 337 (Tex. App.—Dallas 2008, no pet.).

## Personal jurisdiction

Gulf Coast argues that Hawaii Research should be subject to both general and specific personal jurisdiction in Texas because it "purposefully established

6

minimum contacts with Texas over the course of many years as a regular consumer of [Gulf Coast's] products and services."

A nonresident defendant, like Hawaii Research, is subject to personal jurisdiction in Texas if Texas's "long-arm" statute authorizes personal jurisdiction and personal jurisdiction is consistent with federal and state constitutional due process. *Drugg*, 221 S.W.3d at 574. Because the "long-arm" statute authorizes Texas courts to exercise personal jurisdiction as far as federal constitutional requirements of due process allow, the requirements of the statute are met if the constitutional tests are satisfied. *Id.* at 575. "Consequently, in many cases, the analysis of whether a Texas court may assert personal jurisdiction over a nonresident collapses into the single inquiry of whether jurisdiction comports with federal due-process limitations." *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 868 (Tex. App.—Austin 2008, no pet.).

Constitutional due process considerations are satisfied when the plaintiff shows (1) the defendant has "minimum contacts" with Texas and (2) a Texas court exercising personal jurisdiction over that defendant would not offend "traditional notions of fair play and substantial justice." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)).

"The minimum-contacts test focuses on the question of whether the defendant has purposefully availed himself of the privilege of conducting activities in the forum state." *Lensing*, 417 S.W.3d at 155. In determining whether the defendant "purposefully availed himself" of the privilege of conducting activities in Texas, (1) we must "disregard any forum contacts by the defendant that resulted solely from the unilateral activity of another party or a third person"; (2) "the defendant's contacts with the forum state must be purposeful rather than random, isolated, or fortuitous"; and (3) "the defendant must have sought some benefit, advantage, or profit" from its activities in Texas or invoke the benefits and protections of Texas law. *Id.* at 156. "[I]t is only the defendant's contacts with the forum that count: purposeful availment ensures that a defendant will not be haled into a jurisdiction solely as a result of the unilateral activity of another party or a third person." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985)) (internal quotation marks and ellipses omitted). "The courts consider the quality and nature of the defendant's contacts, not their number or the ubiquity of their means." *Proppant Sols., LLC v. Delgado*, 471 S.W.3d 529, 547 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The defendant's "minimum contacts" should be such that it can "reasonably anticipate being sued there." *Id.* at 546 (citing *Burger King*, 471 U.S at 475–76, 105 S. Ct. at 2183–84).

Analyzing a defendant's contacts with Texas is further divided into specific jurisdiction and general jurisdiction. *Marchand*, 83 S.W.3d at 795. Specific jurisdiction is transaction specific; it "is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum" state. *Id.* at 796; *see Johnson v. Kindred*, 285 S.W.3d 895, 899 (Tex. App.—Dallas 2009, no pet.). General jurisdiction is party-specific; it is "jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum" but instead arises from the defendant's general "systematic and continuous" presence within the forum state. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007). General jurisdiction, thus, "is very different" from specific jurisdiction and "involves a more demanding minimum contacts analysis." *Id.* at 168.

In addition to establishing that the defendant has "minimum contacts" with Texas, the exercise of such jurisdiction must "also comport with traditional notions of fair play and substantial justice." *Lensing*, 417 S.W.3d at 156. To determine whether this test is met, we must consider "(1) the burden on the nonresident defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interest

of the several states in furthering substantive social policies." *Id.* We first address

Gulf Coast's assertion of Hawaii Research's specific jurisdiction contacts.

## A. Specific jurisdiction

Texas courts have specific personal jurisdiction over a nonresident defendant

if "(1) the defendant has purposefully availed himself of the privilege of

conducting activities in the forum state, and (2) there is a substantial connection

between those contacts and the operative facts of the litigation." *Lensing*, 417

S.W.3d at 156. A single contact "can support jurisdiction, as long as it creates a

substantial connection with the forum state." *Id.*

For reasons discussed below, we conclude the three contacts alleged by Gulf

Coast are insufficient to create personal specific jurisdiction over Hawaii Research

in Texas.[1]

### 1. Soliciting business from Gulf Coast's Texas office

Gulf Coast argues that Hawaii Research "solicited" business from Texas—

particularly with regard to the second contract. Hawaii Research exchanged

multiple emails and phone calls with Van Vleit, who worked in Gulf Coast's

---

[1] Gulf Coast, in its reply brief, also argues that we are "not limited to the individual transactions" at issue in the case and can look to the "long-term nature of the parties' relationship" to determine whether Hawaii Research is subject to specific jurisdiction in Texas. This, however, is an old rule that has been superseded by *Moki Mac River Expeditions v. Drugg*, which held that "for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." 221 S.W.3d at 585.

Houston office and was Hawaii Research's main point of contact.[2] After Gulf Coast told Hawaii Research about the problems with the vessel's electrical components discovered during the repairs under the first contract, Hawaii Research sent Van Vleit a proposal request that led to the second contract at issue here. Hawaii Research disputes Gulf Coast's characterization of the lead-in to the second contract as Hawaii Research "soliciting" business from Gulf Coast and asserts, instead, that Gulf Coast initiated the second contract by proposing those repairs.

A buyer who merely orders a good from a Texas seller, who ships that good to the nonresident buyer in another state, is generally not, based on that fact alone, subject to specific jurisdiction in Texas. *Gordon & Doner, P.A. v. Joros*, 287 S.W.3d 325, 332 (Tex. App.—Fort Worth 2009, no pet.); *Laykin v. McFall*, 830 S.W.2d 266, 268–71 (Tex. App.—Amarillo 1992, orig. proceeding) (holding that nonresident defendant who purchased ring from Texas that was mailed to her in California was not subject to personal jurisdiction in Texas because she did not travel to Texas to take possession of ring). The general rule is that "contracting with a Texas company and requiring payments in Texas do not alone necessarily establish sufficient minimum contacts to demonstrate specific jurisdiction."

---

[2] Some emails, however, indicate that Hawaii Research also communicated with Gulf Coast's employees in Louisiana. Although Van Vleit avers that the communications with him in Houston were "roughly 90% of the contacts" between Gulf Coast and Hawaii Research, this number does not indicate that Van Vleit or Gulf Coast did 90% of the work on the contracts in Texas.

*Internet Advert. Grp., Inc. v. Accudata, Inc.*, 301 S.W.3d 383, 389–90 (Tex. App.—Dallas 2009, no pet.).

On the other hand, if the nonresident buyer comes to Texas to take possession of property and either removes it from Texas or sells it in Texas, it may be subject to personal jurisdiction in Texas under a specific jurisdiction theory. *Lensing*, 417 S.W.3d at 158. For example, a nonresident buyer who flew from Illinois to Texas, purchased and took possession of a grave marker in Texas, and then transported it back to Illinois was subject to specific jurisdiction in Texas. *Id.*; *see generally Jake Sweeney Auto. Leasing, Inc. v. Tipton*, No. 04-08-00176-CV, 2008 WL 2743961, at *2–3 (Tex. App.—San Antonio July 16, 2008, no pet.) (mem. op.) (holding specific jurisdiction existed over nonresident defendant that entered Texas, paid mechanic's lien on vehicle, and purchased vehicle in Texas); *Small v. Small*, 216 S.W.3d 872, 875–78 (Tex. App.—Beaumont 2007, no pet.) (holding specific jurisdiction existed over Virginia woman who entered Texas to receive diamond for engagement ring from her in-laws).

Insofar as Gulf Coast argues that Hawaii Research is subject to specific personal jurisdiction in Texas for both contracts because of its general contacts with Van Vleit, our analysis for both contracts is the same. *See Delgado*, 471 S.W.3d at 537 ("a court need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contacts"). Hawaii Research's relationship with

Gulf Coast fits within the general rule that merely interacting with a company representative who is in Texas does not subject a nonresident buyer to personal jurisdiction in Texas. Hawaii Research dealt with a Gulf Coast employee in Texas but never came to Texas to pick up good from Gulf Coast, nor did it sell any goods or services in Texas. This case is similar to *Laykin*: even viewing Gulf Coast as a Texas (rather than Louisiana) company, Hawaii Research purchased goods and services from a Texas company but those goods and services were shipped to Hawaii Research in Oregon, Hawaii, and Costa Rica. Thus, Hawaii Research's interactions with Van Vleit do not establish "minimum contacts" with Texas.

Gulf Coast relies on the general principle that a nonresident seller soliciting business from a Texas buyer weighs in favor of Texas having specific personal jurisdiction over the non-resident seller. *See Michiana*, 168 S.W.3d at 785 ("a nonresident [seller] that directs marketing efforts to Texas . . . is subject to suit here"). This general principle is inapplicable here because Hawaii Research was a nonresident buyer, not a nonresident seller. In any event, a fact dispute exists[3] over whether Hawaii Research or Gulf Coast solicited the second contract. Because we

---

[3]     Gulf Coast and Van Vleit argue that Hawaii Research "does not dispute that [Hawaii Research] solicited the work . . . ." This, however, overlooks that Hawaii Research argued in its reply to Gulf Coast's response to Hawaii Research's special appearance that Gulf Coast "asserted that an upgrade" was necessary and sent Hawaii Research a "proposed upgrade." Hawaii Research, in response to this proposal, issued a purchase order for the upgrade that led to the second contract. Thus, a factual dispute exists.

must "imply all findings of fact that are supported by the evidence in favor of the trial judge's ruling," we cannot agree with Gulf Coast that Hawaii Research "solicited" the second contract. *See Lensing*, 417 S.W.3d at 157.

The case law Gulf Coast cites with the transaction going the correct direction (i.e., a nonresident buyer) also does not support its "solicitation" argument as a basis for personal jurisdiction over Hawaii Research. First, it cites *North Coast Commercial Roofing Sys. v. RMAX, Inc.*, 130 S.W.3d 491 (Tex. App.—Dallas 2004, no pet.). In *North Coast*, a resident seller sued a nonresident buyer. *Id.* at 493. The nonresident buyer contracted with the Texas seller knowing that all of the manufacturing would be done in Texas and secured credit from that Texas company for the contract. *Id.* at 495. This combination of facts subjected the nonresident buyer–defendant to personal jurisdiction in Texas. *Id.*

The personal jurisdiction facts in this case do not rise to the level of those in *North Coast*. First, Hawaii Research did not obtain credit from a Texas company, a contact emphasized in *North Coast*. Unlike the buyer in *North Coast*, Hawaii Research did not know that any work would be done in Texas; to the contrary, Ajifu stated that he did not "contemplate" that any work would be done in Texas and the installation work called for in the contract would not be performed in Texas. Nor is there any evidence that the contract contemplated that required training of Hawaii Research employees would occur in Texas. Finally, Gulf Coast

is a Louisiana company with an office in Texas and another office in a third state unlike the seller in North Coast, which was a Texas company. Thus, *North Coast* is not analogous to this case.

Second, Gulf Coast's reliance on *Nogle & Black Aviation, Inc. v. Faveretto* is misplaced. 290 S.W.3d 277, 282–83 (Tex. App.—Houston [14th Dist.] 2009, no pet.). In that case, the nonresident buyer "specifically chose" a Texas engineer to do certain work. *Id.* at 283. Because the seller did this work in Texas and that work in Texas "was not unilaterally initiated by the Texas resident," the buyer was subject to personal jurisdiction in Texas. *Id.*

In contrast, the work that Gulf Coast performed for Hawaii Research in Texas was "unilaterally initiated" by Gulf Coast in Texas. Ajifu's affidavit for Hawaii Research specifically states that Hawaii Research did not "contemplate" that the work would be done in Houston. Unlike *Nogle*, where the buyer could "expect that the choice to use" that particular Texas seller would result in the work being done in Texas, nothing in the record shows that Hawaii Research could "expect" that Gulf Coast would do work in Texas versus one of its other locations. Gulf Coast is a Louisiana company with an office in Ohio, making it at least as likely that the work would be performed outside of Texas. This differs from the seller in *Nogle*, who was a Texas engineer working in Texas. Because the seller in *Nogle* contracted with an individual who did not travel to do the work, it was

15

reasonable to assume that the individual would do the work in Texas. Gulf Coast, however, is an entity with multiple offices in different states that sent workers to the vessel in Costa Rica, Panama, Oregon, and Hawaii. Thus, we cannot say that Hawaii Research "specifically chose" a Texas entity and could "expect" that the work would be done in Texas.

Finally, *Rynone Manufacturing Corporation v. Republic Industries, Inc.* is also distinguishable. 96 S.W.3d 636, 639–40 (Tex. App.—Texarkana 2002, no pet.). In that case, the nonresident defendant-seller called a Texas business to try to sell it kitchen countertops. *Id.* at 639. Because the seller personally solicited a sale from a Texas business, the seller was subject to personal jurisdiction for the kitchen countertops it sent to the business in Texas. *Id.* at 639–40.

Again, although Gulf Coast has a Houston office, it is a Louisiana company with an office in Ohio, unlike the business in *Rynone*, which was a solely Texas business. Second, the defendant in *Rynone* was the seller in the transaction and sent its goods to Texas; here, the defendant was the buyer who never entered Texas nor contemplated that work would be done in Texas. Instead, Gulf Coast sent the goods out of Texas and most of the work consisted of repairs performed outside of Texas. Third, Gulf Coast did at least some of the work for Hawaii Research out of Louisiana—unlike *Rynone* in which all of the work to manufacture the countertops was done in Texas. Finally, unlike the seller in *Rynone* who solicited business from

16

Texas, we cannot say that Hawaii Research solicited Gulf Coast's business. A fact dispute exists over whether Hawaii Research or Gulf Coast initiated the contracts at issue in this case and, because we must "imply all findings of fact that are supported by the evidence in favor of the trial judge's ruling," we cannot agree that Hawaii Research "solicited" the contract in this case. *See Lensing*, 417 S.W.3d at 157.

### 2. Gulf Coast's work in Houston

Although the work on the vessel itself did not take place in Texas, Gulf Coast did some of the work necessary to fulfill its contractual obligations in Houston. For example, Gulf Coast conducted the "analysis, planning, design, sourcing, ordering, assembly, and shipping" of different components at its Houston office. Gulf Coast's Houston office remotely monitored equipment used to complete its work. Gulf Coast's personnel traveled—and invoiced Hawaii Research for that travel—to the vessel from Houston.

Ajifu, however, averred in his affidavit that Hawaii Research "contemplated that [Gulf Coast's] work was to be performed outside of the state of Texas." Hawaii Research argues that the work Gulf Coast did in Texas was minor; it points out that the August proposal that led to the first contract, which included a breakdown of various charges, only charged $16,500 out of approximately $286,000—about 5% of the contract—for the engineering design labor, print

fabrication, and programming services that Gulf Coast asserts were done in Houston. The second contract did not charge anything for these services, instead only charging for the components themselves, expenses for Gulf Coast employees to travel to Hawaii, and labor to install the components on the vessel outside of Texas.

"[O]nly the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009). If "the forum plaintiff's decision to perform its contractual obligation within its own forum state is totally unilateral, it cannot be viewed as purposeful on the part of the nonresident and the weight necessarily is diminished." *Command-Aire Corp. v. Ontario Mech. Sales and Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992). Thus, unilateral work done by the plaintiff in Texas—even if done for a nonresident defendant—does not subject the defendant to personal jurisdiction in Texas.

For example, in *Accudata,* the plaintiff "utilized its facilities, equipment and database in Allen, Texas to provide" the relevant services. *Accudata*, 301 S.W.3d at 389. The contract, however, did not "require performance in Texas." *Id.* Nothing in that case showed that "it mattered to [the defendant] where the contract was performed . . . . " *Id.* Thus, no "purposeful contact" existed to subject the nonresident defendant to personal jurisdiction in Texas. *Id.*

The situation here is indistinguishable from that in *Accudata*. Although Gulf Coast did some work for Hawaii Research from its Houston office, nothing in the record shows that it "matter[ed] to" Hawaii Research "where the contract was performed," nor did the contract "require[] performance in Texas." *See Accudata*, 301 S.W.3d at 389. In fact, unlike *Accudata* in which the contract listed the plaintiff's Texas location as one of thirteen possible locations for the work to be done, Ajifu's affidavit for Hawaii Research stated that it did not even "contemplate" that any work under the contracts with this Louisiana entity would take place in Texas. *See id.* Finally, any work done in Houston appears to be minor: Gulf Coast charged Hawaii Research only 5% of the amount under the first contract for work it says was performed in Houston and did not separately charge Hawaii Research anything for work done in Houston under the second contract. Thus, Gulf Coast's unilateral performance of a small portion of the contract in Texas does not establish specific personal jurisdiction in Texas over Hawaii Research.

### 3.    Ex-works provision of second contract

The second contract provided that certain equipment for upgrading the vessel's generator and drive electronics would be shipped "ex-works"[4] from Gulf

---

[4]    "Ex works" means that "[t]he seller's delivery is complete (and the risk of loss passes to the buyer) when the goods are made available to the buyer at a location of the seller's choice without requiring a collecting vehicle to be loaded, as at the

19

Coast's Houston facility. Although title to those items passed contractually in Houston, Ajifu, states that all "parts, equipment, and/or documents" provided to Hawaii Research under the contract "were delivered" to it "outside of the state of Texas." The "ex-works" provision merely shifted "costs and risks involved in taking the goods from the seller's premises to the desired destination" to the buyer for insurance and related purposes. Henry Gabriel, *The International Chamber of Commerce INCOTERMS 1990—A Guide to their Usage*, 3 VINDOBONA J. INT'L COM. L. & ARB. 61, 63 (1999), http://www.cisg.law.pace.edu/cisg/biblio/gabriel1.html (last visited February 18, 2016). It does not equate to a distant buyer physically arriving in the seller's forum to take possession. *See Hendrix*, 993 S.W.2d at 479.

Gulf Coast does not cite any case law, nor can we find any, holding that an "ex-works" provision of a contract, by itself, establishes specific personal

---

seller's showroom, factory, or warehouse." *Ex Works*, BLACK'S LAW DICTIONARY 667 (9th Ed. 2010). An "ex-works" provision is similar to a "free-on-board" provision of a contract in that the seller's performance of a contract is complete and title passes to the buyer "at the time and place of shipment" rather than "at destination." *See* TEX. BUS. & COM. CODE ANN. § 2.401(b) (West 2009).

From a practical standpoint, however, in an "ex-works" contract, the buyer may never go the location of the seller's choice and load the vehicle. Instead, the seller may ship or otherwise deliver the goods to the buyer at the buyer's place of business but include the "ex-works" or "free-on-board" provision to pass the risk of damage during shipment to the buyer. *See, e.g.*, *C-Loc Retention Sys., Inc. v. Hendrix*, 993 S.W.2d 473, 479 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (although contract provided for "free on board" delivery in Michigan, buyer never traveled to Michigan because seller shipped goods to buyer's Texas residence).

jurisdiction over a defendant; indeed, Texas law holds that such a provision is not sufficient to create personal jurisdiction over a defendant in Texas. *See Hendrix*, 993 S.W.2d at 479. The fact that the goods were shipped free-on-board in the forum state cannot "be the sole determining factor. Instead, we shall look to other facts surrounding the sale of the [goods]." *See id.* at 478 (determining whether contract that provided for "free-on-board" delivery in Michigan for goods that were eventually delivered to Texas plaintiff established personal jurisdiction in Texas over Michigan defendant); *Plains Bag & Bagging Co. v. Golby Bag Co.*, 643 S.W.2d 509, 512 (Tex. App.—Amarillo 1982, no pet.) (looking to final shipment destination instead of "free-on-board" location to determine where contract was performed because Texas buyer could decline goods after receiving them in Texas from nonresident seller).

Gulf Coast cites two cases to support the argument that an "ex-works" provision is a factor to consider in determining whether a nonresident is subject to personal jurisdiction in Texas. That is a factor, but it is not enough to establish personal jurisdiction over Hawaii Research. In the first "ex-works" case relied on by Gulf Coast, *P.V.F., Inc. v. Pro Metals, Inc.*, the court noted that an free-on-board provision was one factor, among seven listed, that courts had considered in determining whether a defendant was subject to personal jurisdiction in Texas. 60 S.W.3d 320, 325 n.10 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). *P.V.F.*

21

only cited *Uvalde Rock Asphalt Co. v. Consolidated Carpet Corporation* to support this factor. 457 S.W.2d 649 (Tex. Civ. App.—Beaumont 1970, writ ref'd n.r.e.). In *Uvalde*, the Texas seller shipped certain goods free-on-board Houston to the buyer at different destinations in Texas. *Id.* at 651–52. The *Uvalde* court noted the free-on-board provision supported personal jurisdiction but held that "[i]t is our opinion that the payment . . . in Texas determined that the foreign corporation . . . had sufficient contact[s], ties or relations with the forum . . . ." *Id.* at 651. Similarly, in *P.V.F.*, the court noted that the nonresident buyer (1) sent purchase orders to the seller's Texas office; (2) sent payment to Texas; and (3) bought the goods on credit from the Texas seller. *P.V.F.*, 60 S.W.3d at 327. Neither *P.V.F.* nor *Uvalde* are similar to this case because Hawaii Research sent payments to Gulf Coast's Louisiana office.

Second, Gulf Coast cites *Nance International, Inc. v. OceanMaster Engineering PTE, Ltd.*, No. 01-11-00664-CV, 2012 WL 5381224 (Tex. App.—Houston [1st Dist.] Nov. 1, 2012, no pet.) (mem. op.). In that case, this Court held that "an F.O.B. term is a relevant factor to consider in a minimum contacts analysis." *Id.* at *6 n.1. We recognized, however, "an F.O.B. term alone is not sufficient." *Id.* at *8. Personal jurisdiction over the nonresident buyer was established because, in addition to the free-on-board term, the buyer–defendant accepted credit from the Texas seller and participated in the manufacturing process

in Texas. *Id. Nance* is distinguishable from this case because Hawaii Research (1) did not obtain credit from Gulf Coast in Texas and (2) did not participate in the manufacturing process in Texas.

Thus, the "ex-works" provision of the second contract cannot, by itself, establish personal jurisdiction over Hawaii Research in Texas.

### 4. Combination of all contacts

Finally, the combination of Hawaii Research's contacts with Texas—which are each individually insufficient—does not establish personal jurisdiction over it in Texas. For the first contract, cases with combinations of contacts similar to those in this case have been held insufficient to create personal jurisdiction. For example, in *Stuart v. Spademan*, the nonresident buyer–defendant engaged in extensive communications with a Texas seller–plaintiff and mailed payment to the seller's Texas address while the plaintiff performed unilateral work on the contract in Texas. 772 F.2d 1185, 1193–94 (5th Cir. 1985). The communications between the plaintiff and defendant "leading up to the agreement [were] insufficient to support an exercise of jurisdiction by a Texas court over" the defendant. *Id.* at 1194. The "agreement to mail payment checks into the forum state [did] not weigh heavily in the calculus of contacts" and did not establish personal jurisdiction over the defendant in Texas. *Id.* Although the underlying agreement created a "continuing obligation" for the buyer to aid the seller with work the seller unilaterally

23

performed in Texas, that obligation fell "short of a connection giving rise to a reasonable anticipation on the part of [the buyer] of being haled into court in the forum state." *Id.* at 1029.

Likewise, in *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, the nonresident buyer–defendant engaged in extensive communications with the Texas seller–plaintiff and mailed payment to Texas for goods that the contract provided would be manufactured in Texas. 700 F.2d 1026, 1028 (5th Cir. 1983). In addition, unlike Hawaii Research which never sent buyer–employees to Texas, the defendant in *Hydrokinetics* traveled to Texas to close the deal. *Id.* Nonetheless, these contacts did not establish personal jurisdiction over the defendant in Texas because "no performance" by the defendant, except for payment, took place in Texas. *Id.*

Like both *Spademan* and *Hydrokinetics*, Hawaii Research communicated with Gulf Coast's Houston office. And Gulf Coast unilaterally performed part of the work on the contracts in Texas. In analyzing the contacts with Texas under the first contract, we follow the reasoning in both *Spademan* and *Hydrokinetics* and conclude that these contacts, taken together, do not establish personal jurisdiction over Hawaii Research in Texas.

Gulf Coast cites to two cases in arguing that the combination of contacts Hawaii Research has with Texas amounts to sufficient "minimum contacts" to subject it to specific personal jurisdiction in Texas. Both are distinguishable. In the

24

first, *Southwest Offset, Inc. v. Hudco Publishing Co.*, the nonresident buyer–defendant signed a contract with the seller–plaintiff, a contract printer that had only a Texas office, to print telephone directories. 622 F.2d 149, 150 (5th Cir. 1980). The nonresident buyer mailed payments and proofs of the telephone directories to the seller's Texas office. *Id.* The buyer "was no mere passive customer of a Texas corporation," instead it "repeatedly placed orders with the Texas corporation." *Id.* at 152. The key fact that established personal jurisdiction, however, was that the buyer–defendant mailed proofs to the plaintiff in Texas, "the sending of the copy to Texas was a necessary part of [the defendant's] contract performance." *Id.* This sending of proofs was "considerably more" than "mailing payments to an office" in Texas. *Id.*

Hawaii Research, in contrast, did not send anything besides payment to Texas. No Hawaii Research employee ever traveled to Texas. Further, because Hawaii Research "contemplated" that all of Gulf Coast's work "was to be performed outside of the state of Texas," Hawaii Research could not have anticipated the need to come to Texas as the work progressed. Thus, *Hudco* does not apply.

The second case, *Command-Aire*, is likewise distinguishable. 963 F.2d at 90. In that case, the contract between the seller–plaintiff, a Texas company, and the nonresident buyer–defendant provided that the goods would be manufactured in

Texas and that the nonresident buyer would travel to Texas to take possession of the goods. *Id*. at 93. But Hawaii Research never traveled to Texas. Nor did Hawaii Research's contract with Gulf Coast require that the work be completed in Texas—to the contrary, Hawaii Research never "contemplated" that any of the work would be done in Texas. Finally, Gulf Coast is a Louisiana Company with an office in Texas—unlike the plaintiff in *Command-Aire*, which was a Texas corporation. In conclusion, the trial court did not err in holding that Gulf Coast did not establish specific personal jurisdiction over Hawaii Research in Texas.

It is unnecessary, therefore, for us to address whether exercising specific personal jurisdiction over Hawaii Research would offend the "traditional notions of fair play and substantial justice" element of the personal jurisdiction test.

## B. General jurisdiction

Gulf Coast argues that Hawaii Research's "broad reach into Texas through other service providers subjects it to personal jurisdiction in a Texas court under a general jurisdictional inquiry."[5]

General jurisdiction over a defendant exists "when a defendant's contacts with a forum are continuous and systematic, [and requires] a more demanding

---

[5] Gulf Coast combined its arguments on general and specific jurisdiction and did not identify which facts it believes supports general jurisdiction and which support specific jurisdiction.We construe the only facts it argues support general jurisdiction to be Hawaii Research's general contracting with other Texas companies because those contacts do not have any connection to the contracts at issue in this case.

minimum-contacts analysis than specific jurisdiction." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). General jurisdiction may be asserted over the defendant only when the defendant's contacts with the forum state indicate that "the corporation is fairly regarded as at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S. Ct. 2846, 2853–54 (2011). If a plaintiff establishes that a defendant is subject to general personal jurisdiction in Texas, a Texas court may "exercise jurisdiction over a defendant even if the cause of action did not arise from or relate to a defendant's contacts with the forum." *Coleman*, 835 S.W.3d at 806–07.

Texas law, however, is clear that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Id.* at 808 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418, 104 S. Ct. 1868, 1874 (1984)). "[P]urchases and trips related thereto, even if they occur regularly, are not, standing alone, a sufficient basis for the assertion of jurisdiction." *Id.* (quoting *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362 n.3 (5th Cir. 1990)).

*DENSO Corporation v. Hall* provides an example of this rule. 396 S.W.3d 681 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In that case, the nonresident buyer came to Texas to tour the Texas seller's facilities, met with the seller in

Texas and Arizona, negotiated the contract in Texas, and had numerous contracts with other Texas companies. *Id.* at 693–95. None of these contacts were sufficient, however, because none showed that the nonresident buyer "can fairly be regarded as being at home in Texas because the trips do not establish that [it] had a general business presence in Texas." *Id.* at 694. Thus, no general personal jurisdiction existed over the nonresident buyer. *Id.* at 696.

This rule applies here. Gulf Coast does not point us to, nor can we locate, any case law to support its position that by doing some business with other Texas service companies, Hawaii Research is subject to general personal jurisdiction in Texas. Hawaii Research's contacts with Texas are far fewer than those in *Hall*: Hawaii Research never came to Texas to tour Gulf Coast's Texas facilities nor did it negotiate the contract in Texas. Thus, we hold that Hawaii Research is not subject to general personal jurisdiction in Texas.

## Conclusion

We affirm the trial court's order dismissing the lawsuit for lack of personal jurisdiction.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.