**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00495-CV**
_____


**AMERICAN EXPRESS CENTURION BANK, Appellant**

**V.**

**PITONO HARYANTO, Appellee**

_____

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-03-03109 CV**

_____

**OPINION**

This is an appeal by a creditor from the trial court's ruling granting a debtor's special appearance. The creditor appealed, and in the appeal, we address whether a debtor who created a credit-card relationship with the creditor who directed the creditor to send his monthly statements to him at a Texas address is subject to the jurisdiction of a Texas court in a debt collection suit to collect the debt due on the credit-card account. Because the debtor established his initial relationship with the creditor in Texas, used the card on a regular basis to charge

1

goods and services sold by merchants located in Texas, and used a billing address in Texas while authorized to use the card, we conclude the debtor purposefully availed himself of the benefits of Texas law regarding the use of the credit card. We conclude that the trial court had specific jurisdiction over the creditor's claims to recover the credit-card debt at issue, and that the trial court erred in granting the debtor's special appearance for lack of jurisdiction.

## Standard of Review

Pitono Haryanto, the debtor who prevailed on his special appearance, contends that he cannot be sued for the credit-card debt at issue in Texas because he resides in the Republic of Singapore. American Express Centurion Bank, a Utah corporation, contends that Haryanto can be sued in Texas for the debt associated with the account because he resided in Texas when he applied for the card, he maintained an address in Texas where he received his monthly statements on the account, and he regularly used the account to charge goods and services sold by merchants located within Texas.

In resolving a defendant's special appearance, "the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). In this case, American Express bore the initial burden of pleading sufficient allegations to bring Haryanto, a nonresident defendant when American Express filed suit, within the

2

provisions of the Texas long-arm statute. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002); *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.001-.093 (West 2015). Once a plaintiff alleges sufficient facts to bring the defendant within the provisions of the State's long-arm statute, the defendant must negate all of the factual allegations in the plaintiff's pleadings that establish that the court possesses the power to exercise jurisdiction over the defendant in the case. *BMC Software,* 83 S.W.3d at 793; Tex. Civ. Prac. & Rem. Code Ann. § 17.001-.093.

Under the Texas long-arm statute, a court has the power to adjudicate a claim against a nonresident when the State's long-arm statute permits it to exercise jurisdiction over the dispute, and when the court's exercise of jurisdiction over the defendant is consistent with federal and state due-process guarantees. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). If a nonresident "engages in business" in this state, and the suit arises from that business, the court has the power to exercise jurisdiction over the nonresident. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.044(b) (West 2015). Jurisdiction is categorized as either general or specific, depending on the nature of the plaintiff's claims.

On appeal, the question of whether the trial court possessed personal jurisdiction over the defendant is reviewed as a question of law. *See Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805-06 (Tex. 2002). If, in

3

ruling on the special appearance, the trial court is required to resolve disputed questions of fact, the trial court's factual findings are reviewed for legal and factual sufficiency, and its legal conclusions are reviewed using a de novo standard. *BMC Software*, 83 S.W.3d at 794. If the trial court does not issue findings of fact in ruling on the defendant's special appearance, as here, the appeals court is required to assume the trial court resolved any disputed facts in a manner that is consistent with the trial court's ruling if the record contains evidence that supports the trial court's resolution of the disputed fact. *See Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010). However, a trial court's implied findings are not conclusive, and if the record on appeal contains a reporter's record and clerk's record, the appellant may use the record to argue that the evidence is insufficient to support implied findings that are relevant to the appeal. *BMC Software*, 83 S.W.3d at 795. In this case, we have the benefit of both a reporter's record and a clerk's record, which contain the information relevant to our resolution of American Express's appeal.

With respect to nonresident defendants, if a court has the power to exercise jurisdiction in the case, it will be either specific jurisdiction, which concerns the specific case and the defendant's contacts with Texas as they relate to the facts of that case, or general jurisdiction, which concerns the defendant's contacts with Texas generally. *Id*. at 796; *see also Helicopteros Nacionales de Colombia, S.A. v.*

4

*Hall*, 466 U.S. 408, 413-14 (1984). In either case, a court's exercise of personal jurisdiction over nonresident defendants is constitutionally permissible when the record demonstrates that (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945); *BMC Software*, 83 S.W.3d at 795. In a case premised on a claim that specific jurisdiction exists, courts examine whether the defendant's alleged liability arises from or is related to an activity that the defendant conducted in the forum where the suit has been filed. *BMC Software*, 83 S.W.3d at 796. In a case based on a claim of general jurisdiction, courts examine and evaluate whether the defendant's contacts with the forum are continuous and systematic, even if the cause of action filed against the defendant in the forum is unrelated to the defendant's activities in the forum. *Id*. at 796.

Because the Texas long-arm statute extends as far as federal due process permits, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). A trial court's conclusion that it does not have personal jurisdiction over a defendant is reviewed using a de novo standard. *BMC Software*, 83 S.W.3d at 794.

Analysis

In 2014, American Express sued Haryanto seeking to collect a debt based on his use of a credit card issued by American Express. In its original petition, American Express alleged that Haryanto resided in Montgomery County, Texas. In response to the suit, Haryanto filed a verified special appearance,[1] alleging that he resides in the Republic of Singapore and that he did not reside in Montgomery County or the State of Texas. In his special appearance, Haryanto also alleged that he had no purposeful contacts with Texas that could be used to assume personal jurisdiction over him on suit filed by American Express to collect the balance that it claimed he owed on the credit-card account.

In support of his special appearance, Haryanto filed an affidavit signed by his mother, Siri Beach, which supports the claim that he made in his special appearance asserting that when the suit was filed, he did not reside in Texas.[2] Beach's affidavit states that Haryanto resides in the Republic of Singapore, that she

_____

[1] Haryanto did not file an affidavit supporting his special appearance, and he did not sign the verification that accompanied his special appearance; instead, Haryanto's attorney signed the verification on his behalf. The verification signed by Haryanto's attorney indicates that he had acquired knowledge of the information found in the special appearance because he has "known and been in contact" with Haryanto for more than twenty years, and had acted as legal counsel on Haryanto's behalf for more than five years.

[2] Haryanto never filed an affidavit in support of his special appearance, and he also did not appear at the hearing the trial court conducted on his special appearance.

is the owner of a dwelling located in Spring,[3] that during the last five years she has owned and resided at the address in Spring, and that during the last five years, Haryanto "has not resided at my dwelling as his usual place of abode." Beach's affidavit goes on to state that Haryanto occasionally visits her in Spring, and that from time to time, she receives mail addressed to him that could not otherwise be forwarded by the post office to him in Singapore.

In response to Haryanto's special appearance, American Express filed an amended petition and a response.[4] In its amended petition, American Express

---

[3] Beach's affidavit identifies her address in Spring, Texas, which is the same address that American Express used to send Haryanto the monthly statements on the credit-card account that is the subject of the suit.

[4] Although Haryanto objected to the timeliness of the business records affidavit attached to the response to Haryanto's special appearance that American Express filed, the reporter's record of the hearing shows that the trial court overruled the objection that Haryanto lodged during the hearing to the timeliness of these pleadings. Additionally, during the hearing, Haryanto did not assert or claim that he was surprised or claim that he needed a continuance to address the allegations and evidence American Express presented in its amended answer and response. *See Goswami v. Metro. Sav. & Loan Assoc.*, 751 S.W.2d 487, 490 (Tex. 1988) (holding that a failure to obtain leave of court when required by Rule 63 of the Texas Rules of Civil Procedure may be cured by the trial court's action in considering the amended pleading). We further note that the trial court's order on Haryanto's special appearance indicates the court considered the responses that were filed. *See* Tex. R. Civ. P. 63 (allowing pleadings or responses to be filed within seven days of the date of trial on leave of court, and requiring the court to grant leave for late filling unless there is a showing of surprise). Accordingly, for purposes of appellate review, we have determined that the pleadings and evidence filed by American Express that the trial court considered in ruling on Haryanto's special appearance consisted of the following: American Express's First Amended Petition, its response to Haryanto's special appearance, the evidence that was

7

alleged that Haryanto, a nonresident, had purposefully availed himself of the privilege of conducting activities in Texas, that he had engaged in business in Texas, and that this suit arose from the business Haryanto conducted in Texas. In its response to Haryanto's special appearance, American Express alleged that Haryanto "purposefully availed himself of the privilege of conducting activities within Texas because [Haryanto] applied for the credit account" from American Express "while residing at [address], Spring, Texas[.]" The pleadings filed by Haryanto considered by the trial court do not contradict American Express's allegation that Haryanto resided in Spring when he applied for the card at issue in the suit.[5]

---

attached to its response, and its supplemental response. With respect to the pleadings and evidence filed by Haryanto, we have determined that the trial court considered the following: Haryanto's verified special appearance, his original answer, his first supplement to his special appearance, which contains Beach's affidavit, his reply to American Express's response to his special appearance, his amended reply to that response, and a letter sent to the trial court that contained copies of various cases that Haryanto wanted the trial court to consider in ruling on his special appearance. *See Pink v. Goodyear Tire & Rubber Co.*, 324 S.W.3d 290, 294 (Tex. App—Beaumont 2010, pet. dism'd) (noting that a judgment which stated the court had considered "all of the evidence on file" indicates the trial court considered evidence that a party filed after the hearing but before the date that it issued a ruling).

[5] The evidence before the trial court regarding Haryanto's account indicates Haryanto opened the account in June 2004. Beach's affidavit, the only evidence Haryanto filed to support his special appearance, does not address when Haryanto opened the account or where he lived when the account was opened.

A trial court must determine a special appearance on the basis of the pleadings, the stipulations of the parties, the affidavits, the attachments to the pleadings filed by the parties, the results of discovery, and any oral testimony presented at the hearing. *See* Tex. R. Civ. P. 120a(3). Thus, the allegations in the plaintiff's pleadings frame the dispute and identify the facts that are in dispute as well as those that are not. With respect to the allegations in dispute, the parties must present facts to the trial court on the disputed issues so they may be resolved. *See Kelly*, 301 S.W.3d at 658 n.4 (explaining that the evidence and attachments relevant to the special appearance are used to support or undermine the allegations that are in the parties' pleadings).

Therefore, although Haryanto's pleadings generally allege that he did not conduct business in Texas, his general and conclusory pleading did not contradict American Express's specific factual allegation that Haryanto opened the credit-card account while residing in Texas. *See Lobell v. Capital Transp., LLC*, 2015 Tex. App. LEXIS 12628, No. 03-13-00855-CV, **20-21 (Tex. App.—Austin Dec. 15, 2015, no pet.) (mem. op.); *Hoagland v. Butcher*, 396 S.W.3d 182, 193 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Under the burden shifting analysis described in *Kelly*, and given the pleadings before the trial court regarding the special appearance, the burden of pleading facts and proving that Haryanto was not a resident of Texas in 2004 when he opened the account fell to Haryanto. *See*

*Kelly*, 301 S.W.3d at 658 ("Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff."). In this case, Haryanto's pleadings and the jurisdictional evidence before the trial court failed to place this jurisdictional fact in issue.

The evidence before the trial court also shows that after opening the credit-card account, American Express sent Haryanto's monthly account statements to the address he provided in Spring. The evidence also shows that Haryanto never changed his mailing address as it related to his relationship with American Express, and that American Express sent all of his statements to him in Texas.[6] In our opinion, the act of applying for a credit card while residing in Texas and then using a Texas address to receive monthly statements on the account is an act that constitutes "doing business" under the Texas long-arm statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (providing nonexclusive list of acts that constitute doing business for purposes of long-arm jurisdiction). Because Haryanto resided in Texas when he applied for and created the account and then never changed his address, we further conclude that Haryanto benefitted from Texas' laws regulating

---

[6] The agreement between Haryanto and American Express provides that accountholders notify American Express of changes to their addresses.

consumer debt collection practices that occur within Texas.[7] *See* Tex. Fin. Code Ann. §§ 392.001-.404 (West 2006).

The parties dispute whether the contacts Haryanto had with Texas regarding his account were sufficient to justify the trial court's exercise of specific jurisdiction over the suit. When a defendant's contacts with the forum are analyzed to determine if specific jurisdiction exists, the minimum-contacts analysis focuses on the relationship between the defendant, the forum, and the litigation. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575-76 (Tex. 2007). To support a finding of specific jurisdiction, there must be a "substantial connection" between the defendant's contacts and the operative facts of the litigation. *Id*. at 585.

Although Haryanto used the credit card extensively overseas, the jurisdictional facts show that he was a resident of Texas when the card was issued and that all of his monthly statements were sent to him in Texas. Although required

---

[7] While the agreement between Haryanto and American Express has a choice of law provision providing Utah law and federal law as the governing law relating to the agreement and account, neither Texas law nor the choice of law provision in the agreement indicates that the Texas Finance Code provisions regulating debt collection practices in Texas do not apply to a creditor seeking to collect a debt in Texas, and Texas has a strong interest in regulating debt collection practices that occur within its borders. *See generally, Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 440 (Tex. 2007) (noting that given Texas' strong interest in regulating the sales of securities in and from Texas, the registration provisions of the Texas Securities Act, requiring dealers to be registered when they were in Texas when the securities were offered or sold, were governed "under any conflict of law principles that might apply").

to inform American Express of any changes to his mailing address, he never did so. Additionally, the evidence before the trial court shows that Haryanto's credit card was used to obtain goods and services from merchants located in Texas on a frequent basis, and that while the account relationship existed, Haryanto traveled to Texas to see his mother and charged services sold by Texas merchants to the card while he was there.

With respect to where the relationship of the parties centers, the evidence shows that charges to the card within the United States are more centered in Texas than in any other State. We conclude that a substantial connection exists between Haryanto's contacts with Texas and the operative facts of American Express's suit for debt. Based on the pleadings and the evidence before the trial court, we hold that Haryanto's contacts with Texas were sufficient to allow a Texas court to exercise jurisdiction over American Express's suit to collect the debt that Haryanto owed on the account.[8]

Once a court determines that a nonresident has sufficient minimum contact with the forum that specific jurisdiction exists, those contacts are analyzed to

---

[8] Given our conclusion that specific jurisdiction exists over the suit American Express filed to collect a debt, we do not reach American Express's argument asserting that the trial court also had general jurisdiction over its claim. *See Citrin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 279 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting that "[i]f the court finds specific jurisdiction over a defendant based on one cause of action, the court need not address jurisdiction as to any other causes of action[]").

determine whether a finding of personal jurisdiction is consistent with the principles of fair play and substantial justice. *Guardian Royal*, 815 S.W.2d at 228. Factors used to evaluate whether the exercise of jurisdiction would be fair and just in a case include (1) the burden on the defendant to litigate the case in the forum, (2) the interest of the forum state in deciding the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and (5) the shared interest of the several states in further fundamental substantive social policies. *Id*. "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). "However, regardless of these factors, it must be established that the nonresident defendant purposely established minimum contacts with the forum state." *Guardian Royal*, 815 S.W.2d at 228. And, even when a nonresident defendant has purposely established minimum contacts with the forum, the exercise of jurisdiction over him may not be fair and reasonable under the facts of a particular case. *Burger King*, 471 U.S. at 477–78. Nonetheless, "[o]nly in rare cases [] will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the

13

forum state." *Guardian Royal,* 815 S.W.2d at 231 (citing *Burger King*, 471 U.S. at 477-78).

Based on all of these factors, we conclude that the exercise of personal jurisdiction over Haryanto is consistent with traditional notions of fairness and justice. While Haryanto contends he would be substantially burdened by being required to litigate in Texas because he resides in Singapore, Haryanto's agreement with American Express includes an arbitration agreement, which contemplates that any disputes regarding the card would take place "in the federal judicial district of your residence." When Haryanto entered into the agreement with American Express, the jurisdictional facts indicate that the parties contemplated a Texas forum for disputes related to the use of the card. Also, Haryanto never changed the address for the account and nothing indicates that he ever established another residence within the United States. Therefore, it appears that Haryanto should have reasonably anticipated that litigation to resolve disputes over the account would be brought against him in Texas. While Haryanto argues that he would be unduly burdened by litigating the dispute in Texas, there is no evidence showing that a forum within the United States in some other state would be more convenient. Generally, the distance that a defendant may be required to travel is not a significant consideration in deciding whether that person would be unduly burdened, given modern transportation and facts that do not show the defendant is

14

unable to travel. *See Citron Holdings, LLC v. Minnis*, 305 S.W.3d 269, 288 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

We also look to the contract's choice of law clause in evaluating whether a defendant contemplated being sued in the forum. In this case, the contract contains a Utah choice of law provision; however, the written agreement does not contain a provision stating that the debtor agreed to submit to the jurisdiction of Utah courts to resolve any disputes. Additionally, the record does not show that Haryanto ever lived in Utah or that he contemplated he might be sued there. There was also no evidence that Haryanto had substantial contacts in Utah. While we do not ignore the choice of law provision in determining what was fair and just, the choice of law clause is not dispositive on a determination of whether it is fair and just to require that Haryanto defend the debt collection suit in Texas resulting from an account that he formed while residing in Texas. *See Minnis*, 305 S.W.3d at 282.

We also address the fairness of requiring Haryanto to defend this suit in Texas. With respect to fairness, we note that Haryanto structured his relationship with American Express in a manner that provided him greater protection as a debtor than the protection available to him under federal law. *Compare* Federal Debt Collection Act, 15 U.S.C.A. § 1692a(6) (current through  PL 114-115) (defining "debt collector" in a way that the provision does not include creditors), *with* Tex. Fin. Code Ann. § 392.001(6) (defining "debt collector" more broadly to

include creditors seeking to recover on a debt owed them directly by their debtors); *see also Monroe v. Frank*, 936 S.W.2d 654, 660 (Tex. App.—Dallas 1996, writ dism'd w.o.j.) (holding that the definition of "debt collector" under the Texas Debt Collection Practices Act, the predecessor to the provision now found in the Finance Code, "applies to entities attempting to collect their own debts"[9]). Given Texas' interest in regulating debt collection practices that occur within the State, and the fact that the account was opened by a Texas resident and then maintained through the use of a Texas address, we conclude it is fair to require the suit to be tried in Texas. Additionally, we note that Haryanto has not explained why Utah would not desire to see a contract governed by the laws of its state enforced somewhere within the United States, likely the sole forum in which Haryanto is subject to being sued for the debt at issue.

After weighing all of the relevant factors, we conclude that the Texas courts may exercise personal jurisdiction over Haryanto in a suit to collect the debt associated with a card at issue, and that the exercise by the court of specific jurisdiction over the dispute between the parties in this case does not offend traditional notions of fair play and substantial justice. *See Kelly*, 301 S.W.3d at

---

[9] The Texas Debt Collection Practices Act was revised and recodified in 1997. *See* Act of May 24, 1997, 75th Leg., R.S., ch. 1008 § 1, sec. 392.001(6), §§6-7, 1997 Tex. Gen. Laws 3091, 3562, 3602-603 (current version at Tex. Fin. Code Ann. § 392.001(6)).

659. We hold that the trial court erred by dismissing American Express's suit for lack of jurisdiction.

## Conclusion

We agree with American Express that Haryanto purposefully availed himself of the privilege of creating his account while residing in Texas, that Haryanto had sufficient contacts with the State to allow the court to exercise specific jurisdiction over the case, and that the maintenance of the suit does not offend traditional notions of fair play or substantial justice. Therefore, we sustain issues one, two, and four. Given our resolution of these issues, we need not resolve American Express's remaining three issues.[10] Tex. R. App. P. 47.1. We reverse the trial court's order granting the special appearance, render an order denying Haryanto's special appearance, and remand the cause to the trial court for further proceedings consistent with the opinion.

REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.

_____
HOLLIS HORTON
Justice

Submitted on July 31, 2015
Opinion Delivered April 21, 2016
Before McKeithen, C.J., Horton and Johnson, JJ.

_____

[10] Issue three asserts that Haryanto had sufficient contacts to support general jurisdiction. Issue five argues that Haryanto's special appearance was improperly and insufficiently verified. Issue six asserts that Haryanto generally appeared in the suit and that by doing so, waived his special appearance.