In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00063-CV
_____

**MAJORS MANAGEMENT, LLC, 1201 SOUTH 2ND STREET, LLC, 1400 HOLLYWOOD AVENUE, LLC, 1400 SWAN LAKE ROAD, LLC, 2264 BARKSDALE BLVD, LLC, 2450 LAKESHORE DRIVE, LLC, AND 4903 AIRLINE DRIVE, LLC, Appellants**

**V.**

**PRICE AND COMPANY, Appellee**

**On Appeal from the 136th District Court**
**Jefferson County, Texas**
**Trial Cause No. D-197,816**

**MEMORANDUM OPINION**

This case arises from a business arrangement whereby Appellee, Price and Company ("Price"), a Texas-based distributor, sold cigarettes and other merchandise on a wholesale basis to convenience stores in Louisiana; the stores, in turn, resold the merchandise to retail customers. Price filed several lawsuits against various nonresident defendants relating to unpaid invoices, and all but one of the defendants

1

entered special appearances in their respective cases, asserting that Texas courts lacked personal jurisdiction over them. All of the special appearances were denied, and this interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2017). We reverse and render.

## Factual Background

Price is a wholesale distributor based in Beaumont, Texas. Price obtained permits to expand its business into Louisiana in 2002, and has at least one salesman who spends Sunday through Thursday of each week in Louisiana taking care of Price's various Louisiana customers.

Haroon Anwar is an individual who resides in Georgia.[1] Anwar is the Chief Executive Officer of HR Associates, Inc., a Georgia corporation ("HR Associates"). From 2013 to 2015, HR Associates was the tenant and operator of six convenience stores located in Louisiana.[2] Each of those six convenience stores is owned by a separate foreign limited liability company named for the street address of the respective store (collectively the "Store LLCs"), and Anwar operated each store under its respective LLC name. The six parcels of land in Louisiana are owned by

---

[1] Anwar is a defendant in each of the underlying lawsuits, but he did not file a special appearance and is not a party to this appeal.

[2] The record indicates that this arrangement involved sixteen convenience stores in total; however, only six of those are the subject of the underlying suits now on appeal.

2

six separate Georgia limited liability companies, not parties to the underlying lawsuit. Majors Management, LLC, ("Majors"), a Georgia limited liability company, manages administrative matters relating to the properties by collecting rental payments from the store tenants, paying expenses related to the properties, and distributing the remainder of the rental proceeds to the individual property owners.

In May 2013, Anwar and Price entered into a business relationship whereby Price sold cigarettes and other wholesale items for resale in the six Louisiana store locations. For each store, Anwar or his employees ordered the goods using Price's cipher system[3], or by phone, fax, or online. Price filled all orders by shipping the requested products from its warehouse in Beaumont, Texas, and delivering them to the various stores in Louisiana. Invoices produced by Price at the time of each sale indicate that the goods were sold to HR Associates. Anwar paid the invoices for each store with checks written on the respective Store LLC's checking account and resold the items as retail goods in the name of the stores. The revenue generated by those retail sales was deposited into the respective Store LLCs' checking accounts. Anwar and Kamal Khadka, one of Anwar's employees, were authorized to write checks out

---

[3] The cipher system is comprised of individual cipher machines owned by Price and placed on the premises of each of the Louisiana stores where goods were ultimately delivered.

of the individual Store LLC accounts. Majors denies any involvement in the arrangement between Price and Anwar or HR Associates.

In October of 2015, Majors, acting on behalf of owners of the properties, notified Anwar of his impending dismissal as the operating tenant of the stores. As part of the transition of management, the inventory remaining in each store was to be purchased by the new operating tenant, and Majors arranged for Anwar to be paid a flat fee for the inventory of each store. Majors structured the transaction and an independent company counted the inventory. Majors ultimately oversaw and facilitated the transfer of control of the store operations from Anwar to the new tenant. In doing so, Majors took control of all unsold inventory in the stores for the new tenants, and the new tenants paid money to Majors for the purchase of the inventory rather than paying Anwar directly. During this transfer period, Majors also communicated with Price and, according to Price, agreed to pay the amounts Anwar still owed for inventory he had purchased for a total of sixteen stores he had operated. Majors ultimately paid Price some, but not all, of the outstanding balances on each of the stores with money received from the new operating tenants. Specifically, Price alleges that Majors paid the full balance owed for ten of the stores, but did not pay the full balance of the six stores that are the subject of the underlying suit.

4

On November 18, 2015, Price filed six separate lawsuits relating to these events. Each suit was filed against Anwar, Majors, and one of the Store LLCs. Majors and the Store LLCs filed special appearances in each suit, all of which were denied following an evidentiary hearing. The suits were then consolidated, and Majors and the Store LLCs filed a joint notice of appeal.

## Personal Jurisdiction

A Texas court may exercise personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). Relevant to the facts of this case, Texas's long-arm statute provides that a nonresident does business in this state if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; or (2) commits a tort in whole or in part in this state. *See* Tex. Civ. Prac. & Rem. Code Ann § 17.042(1), (2) (West 2015). The statute further provides that "other acts" by the nonresident may constitute "doing business" in the state, and the Texas Supreme Court has interpreted this broad statutory language to reach "as far as the federal constitutional requirements of due process will permit." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (quoting

5

*U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). "Thus, the requirements of the Texas long-arm statute are satisfied if an assertion of jurisdiction accords with federal due-process limitations." *Moki Mac*, 221 S.W.3d at 575.

The exercise of personal jurisdiction over a nonresident defendant requires first that the nonresident have established minimum contacts with the forum state and also that the exercise of such jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795. Minimum contacts are sufficient when the nonresident purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of that state's laws. *Moki Mac*, 221 S.W.3d at 575; *see also Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005) (noting that the touchstone of jurisdictional due process has long been "purposeful availment"). Proper analysis of purposeful availment requires consideration of three factors.

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. . . . Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Moki Mac*, 221 S.W.3d at 575 (internal quotes and citations omitted). Additionally, to determine whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice, we consider the potential burden on the

6

nonresident defendant as well as the competing interests of the plaintiff, the forum and the interstate judicial system in general. *See Lensing v. Card,* 417 S.W.3d 152, 156 (Tex. App.—Dallas 2013, no pet.).

A nonresident defendant's contacts may give rise to either specific or general jurisdiction. *BMC Software*, 83 S.W.3d at 795. "Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the [state]." *Id.* at 796. General jurisdiction, on the other hand, is predicated on a nonresident's "continuous and systematic" contacts with the state. *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 165 (Tex. 2007). Because general jurisdiction permits a court to exercise personal jurisdiction over a nonresident for claims not directly linked to the defendant's contacts with the state, a general jurisdiction inquiry requires "a 'more demanding minimum contacts analysis,' with a 'substantially higher' threshold[.]" *Id.* at 168 (quoting *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996) and 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5 (2007)). Although there is no precise formulation for the amount of contacts necessary to establish general jurisdiction, it is clear that the requisite level is substantial. *Id.* at 167. The U.S. Supreme Court made clear the high threshold in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), holding that a State may exercise general

7

jurisdiction only where a defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." 564 U.S. at 924.

### Standard of Review

When a nonresident defendant challenges personal jurisdiction, the parties bear shifting burdens of proof. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).

> [T]he plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff.

*Id.* (internal citations omitted). The trial court resolves the special appearance based on the pleadings, any stipulations between the parties, any affidavits and attachments filed by the parties, the results of any discovery conducted, and any oral testimony before the court. Tex. R. Civ. P. 120a(3).

On appeal, whether the trial court has personal jurisdiction over a nonresident defendant is a question of law that we review *de novo*. *BMC Software*, 83 S.W.3d at 794. If a trial court's ruling on personal jurisdiction requires resolution of underlying factual disputes, however, the court's factual findings are reviewed under a legal and factual sufficiency standard, while the legal conclusions drawn therefrom are subject

8

to *de novo* review. *Id.* When a trial court does not issue findings of fact and conclusions of law, as in this case, we must presume that the trial court resolved any disputed facts in a manner that is consistent with the trial court's ruling if the record contains evidence supporting such a resolution. *Am. Express Centurion Bank v. Haryanto*, 491 S.W.3d 337, 342 (Tex. App.—Beaumont 2016, no pet.). "However, a trial court's implied findings are not conclusive, and if the record on appeal contains a reporter's record and clerk's record, the appellant may use the record to argue that the evidence is insufficient to support implied findings that are relevant to the appeal." *Id.*

## Analysis

In each of their jointly filed special appearances, the Store LLCs and Majors assert that: (1) the Store LLCs and Majors are all foreign entities not registered to do business in Texas and do not maintain any place of business in Texas; (2) the Store LLCs and Majors are not amenable to process issued by the courts of the State of Texas; (3) Texas courts lack personal jurisdiction over the Store LLCs and Majors because none of those defendants established minimum contacts with Texas; and (4) a Texas court's exercise of personal jurisdiction over the Store LLCs and Majors would not comport with traditional notions of fair play and substantial justice. With

9

regard to minimum contacts, the Store LLCs and Majors asserted the following in affidavits submitted in support of their special appearances:

> . . . Majors Management, LLC and [the Store LLCs] are separate Georgia limited liability companies. Majors and [the Store LLCs] are each organized in Georgia and have their respective principal places of business in Georgia.
>
> . . . Majors and [the Store LLCs] are not [sic] and have never had a principal place of business or any business location or operations in the State of Texas. Majors and [the Store LLCs] do not and have never maintained their respective principal places of business in the State of Texas.
>
> . . . Majors and [the Store LLCs] have never conducted business in the State of Texas. Further, Majors and [the Store LLCs] do not conduct business under any other names in the State of Texas.
>
> . . . Majors and [the Store LLCs] do not own and have never owned any real or personal property in Texas.
>
> . . . Majors and [the Store LLCs] do not maintain and have never maintained any bank accounts in Texas.
>
> . . . Majors and [the Store LLCs] do not have and have never had any offices, stores, warehouses, or leased space in Texas.
>
> . . . Majors and [the Store LLCs] have no employees in the State of Texas. Majors and [the Store LLCs] have never had employees within the State of Texas.

On appeal, Majors and the Store LLCs contend that they negated all alleged grounds for the district court to establish personal jurisdiction over them.

10

Price responds on appeal that the Store LLCs had "sufficient contacts with Texas to establish both general and specific personal jurisdiction and that Majors Management has sufficient contacts with Texas to establish specific personal jurisdiction." We examine the Store LLCs and Majors separately, as personal jurisdiction must be independently established as to each defendant.[4] *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Hoagland v. Butcher*, 396 S.W.3d 182, 194 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (plurality opinion).

### 1. Store LLCs

The first argument upon which the Store LLCs rely to defeat personal jurisdiction is that the products sold by Price were sold not to the Store LLCs, but to HR Associates as the operating tenant of the convenience stores; therefore, those contacts could not be attributed to the Store LLCs. They alternatively argue that, even if the actions of Anwar or HR Associates are attributed to the Store LLCs, multiple purchases of goods from a Texas supplier when title to the goods transfers

---

[4] While personal jurisdiction must be analyzed as to each defendant individually, the record on appeal reveals no discernable distinction between or among the individual Store LLCs in relation to Price, and the parties have made no attempt to distinguish among them in the trial court or on appeal; therefore our reference to these defendants will be collective and our analysis of them is equally applicable to all.

11

in Louisiana do not establish sufficient minimum contacts to secure personal jurisdiction by a Texas court. We agree with the latter argument.[5]

"A buyer who merely orders a good from a Texas seller, who ships that good to the nonresident buyer in another state, is generally not, based on that fact alone, subject to specific jurisdiction in Texas." *Gulf Coast Int'l, L.L.C. v. The Research Corp. of the Univ. of Hawaii*, 490 S.W.3d 577, 585 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). Whether specific jurisdiction has been established as to a nonresident defendant, then, turns on whether there is sufficient additional evidence to demonstrate the nonresident defendant's purposeful availment of the benefits and protections of the foreign forum. *See P.V.F., Inc. v. Pro Metals, Inc.,* 60 S.W.3d 320, 324–25 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (noting that cases in which a Texas seller sues a nonresident buyer often present a tenuous due process analysis, the outcome of which generally depends on narrow factual distinctions).

In support of its assertion of purposeful availment, Price argues that: (1) the Store LLCs initiated the relationship with a Texas company; (2) the Store LLCs routinely ordered goods from Price by cipher, telephone, fax or online; (3) all orders

---

[5] Because we find that the evidence of Anwar's contacts on behalf of the stores is insufficient to establish personal jurisdiction over those entities, we presume without deciding that Anwar's actions taken in the name of the Store LLCs were, effectively, the actions of the Store LLCs.

12

were placed and filled in Texas; and (4) payments were directed to Texas. We address each of these in turn.

While the parties agree that Price and Anwar began doing business in May 2013, they dispute whether it was Price or Anwar that sought out the relationship. The record does contain evidence that Anwar contacted Misbah Chaudhry, Price's accounts receivable manager, regarding accounts or credit for each of the stores; however, there is no evidence that that was the first contact between the parties and no basis upon which to presume that a telephone call to set up accounts with a receivables manager occurred prior to any introduction or interaction with any other representative regarding what goods Price could supply and upon what terms. *See Haryanto*, 491 S.W.3d at 342 (noting that an appellate court must imply findings in support of the trial court's judgment, but only where the record contains evidence supporting such a finding). The only other evidence in the record that could be construed as pertaining to the inception of the relationship was Chaudhry's testimony that Price's CEO and one of its Louisiana salesmen met with Anwar in Baton Rouge, Louisiana to "build a relationship with him." Thus, we find that the record contains no evidence that the Store LLCs purposefully sought out the benefit of doing business with or in the state of Texas rather than with a distributor that was

13

registered and actively conducting business in Louisiana, but also happened to be based in Texas.

With regard to communication, it was undisputed that Anwar or his employees routinely ordered goods from Price by cipher, telephone, facsimile or online purchase. Price contends that the goods were ordered from Texas with Anwar having full knowledge of the location of Price's facility. The record shows that all products were shipped from Texas to Louisiana. However, the general rule is well established that a nonresident buyer's purchases from a Texas seller that ships goods to a buyer who takes title to the goods upon their delivery in the state of its domicile is not, without more, subject to specific jurisdiction in Texas. *Gulf Coast Int'l*, 490 S.W.3d at 586. Moreover, while the orders may have been communicated to Texas and filled from a warehouse in Texas, neither Anwar nor anyone associated with the Store LLCs ever entered Texas to place the orders or to take delivery of store goods. Rather, the orders were all delivered by Price to the stores in Louisiana. Therefore, each sale effectively occurred in Louisiana upon delivery of the goods. *See* Tex. Bus. & Com. Code Ann. § 2.401(b) (West 2009) (providing that "[u]nless otherwise explicitly agreed[,] title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods," even if the seller retains a security interest in the goods). Chaudhry, Price's own

14

representative, acknowledged as much when she testified that no Texas sales tax certificates were ever issued for the Store LLCs because the parties' transactions were all conducted in Louisiana, not in Texas. Under these facts, the routine purchase of goods in Louisiana from a Texas seller for resale entirely outside of Texas is not sufficient to constitute purposeful availment.

Price also points out that the Stores routinely made payments to Price; however, there is no record of any written contract between the parties that specified a place of payment. Where there is no contract explicitly specifying where contractual payments are to be made, the place of payment is generally recognized as the domicile of the payor, not the payee, regardless of where the payment is ultimately received. *Internet Advert. Grp., Inc. v. Accudata, Inc.*, 301 S.W.3d 383, 389–90 (Tex. App.—Dallas 2009, no pet.). Nonetheless, even characterizing the payments sent to Price as having been "made in Texas," such contacts still do not constitute purposeful availment. *See U–Anchor*, 553 S.W.2d at 763 (defendant who prepared and mailed checks to forum state did not have sufficient minimum contacts with the forum); *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985) (stating that defendant's "mailing of payments to the plaintiffs in Texas can hardly be termed significant in terms of determining purposeful availment of the benefits of the forum state's laws.").

Price further points to Anwar's request for an extension of credit for each of the stores,[6] suggesting that contracting with and securing credit from a Texas company is sufficient to subject a nonresident buyer to personal jurisdiction in Texas and citing as support *Gulf Coast Int'l*, 490 S.W.3d at 585–86 and *North Coast Commercial Roofing Sys. v. RMAX, Inc.*, 130 S.W.3d 491, 495 (Tex. App.—Dallas 2004, no pet.). This argument oversimplifies jurisdictional analysis and ignores the narrow but important factual distinctions of the cited cases. For example, in *North Coast*, the appellate court considered the nonresident buyer's act of securing credit from the resident seller-plaintiff as one factor in favor of subjecting the nonresident buyer to personal jurisdiction in Texas; however, that court also noted that the written contract between the parties contained a provision requiring all payments to be remitted to Texas as well as a choice of law provision requiring that all disputes under the contract would be governed by Texas law. 130 S.W.3d at 495. The court concluded that neither contracting with a Texas company, nor contractually designating Texas as the place of payment, nor a choice of law provision, each standing alone, would establish jurisdiction, but that all of those facts together,

---

[6] Although Price contends that Anwar completed a credit application on behalf of each of the stores, it produced no such credit applications nor any credit agreements between the parties. Invoices issued by Price showed that the balance of each was due within seven days of the invoice date and if not paid within thirty days, were subject to a monthly interest charge.

16

"combined with evidence" that the nonresident obtained the goods on credit, rose to the level of purposeful availment. *Id.* Likewise, in *Gulf Coast*, the appellate court distinguished the facts of its case from *North Coast* by noting that the nonresident defendant in its case had not obtained credit from Texas; however, the absence of credit was only one of several ways in which the personal jurisdictional facts of *Gulf Coast* did not "rise to the level of" the combination of factors described in *North Coast*. *See Gulf Coast Int'l*, 490 S.W.3d at 586. Here, as in *Gulf Coast*, even considering the financial arrangement between Price and Anwar or the Store LLCs, the jurisdictional facts of this case simply do not rise to the level of purposeful availment to justify specific jurisdiction. *See Accudata*, 301 S.W.3d at 389–90 (finding no personal jurisdiction and distinguishing *North Coast*, in part, by holding that a requirement for all invoices to be paid in full within a certain number of days and subject to service charges thereafter could not be construed as "credit in the traditional sense").

Finally, Price contends broadly that the Store LLCs' contacts were sufficient to establish both specific and general personal jurisdiction; however, neither its pleadings in the trial court nor its briefing on appeal specifically address general jurisdiction. Our review of the record in its entirety reveals only one evidentiary fact potentially relevant to general, as opposed to specific, jurisdiction: that one of

17

Anwar's employees, Khadka, traveled to Texas once to attend a meeting with Price representatives to "further improve the relationship" and to purchase an unspecified "novelty item," although there is no evidence of what the item was or that it was for store business, rather than Khadka's personal enjoyment.[7] Price neither argued nor produced evidence that the Store LLCs had continuous and systematic contacts with Texas outside of the operative facts of this suit such that the Store LLCs would feel "at home" in that forum. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72 (Tex. 2016) (stating that general jurisdiction over a nonresident defendant is only appropriate where the nonresident's contacts are so continuous and systematic as to render it essentially at home in the forum state); *PHC–Minden,* 235 S.W.3d at 165–67 (describing the requisite level of contacts necessary to establish general jurisdiction as substantial).

Accordingly, we find that there is insufficient evidence of minimum contacts necessary to establish either specific or general jurisdiction as to the Store LLCs, and the trial court erred by denying each of their special appearances. We sustain the Store LLCs' first issue.

---

[7] We consider this relevant to general, rather than specific, jurisdiction because the record contains no indication that the visit was related to the past due balances that led to the lawsuits.

## 2. *Majors Management*

As to Majors's contacts with Texas, the record indicates that Majors had no involvement in the arrangement between Price and the Store LLCs prior to the transfer of store operations from Anwar to the new operating tenants, and therefore, no control over the fact that the indebtedness incurred by Anwar for the Louisiana inventory was due and owing to a company in Texas. Even taking as true Price's allegations that Majors agreed to assume all of Anwar's outstanding debts for the stores, specific jurisdiction must still rest exclusively on the contacts Majors itself had with Texas; the contacts Anwar or the Store LLCs had with the forum may not be imputed or attributed to Majors to establish personal jurisdiction. *See Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991) (noting that the requirement of purposeful availment ensures, among other things, that a nonresident defendant will not be haled into a jurisdiction based upon unilateral activity of another party or a third person).

In support of its assertion that Majors had minimum sufficient contacts with Texas, Price points to evidence that Majors contacted Price in Texas and assured it that Majors would pay Anwar's balances owed for each of the stores; communicated with Price by telephone and email with knowledge that Price was located in Texas; made material misrepresentations to Price regarding payment of Anwar's balances

19

while Price was located in Texas; and wired money to Price in Texas. Majors did not at any point, through any of its agents or employees, physically enter the state; rather, all of its contacts with Price were through telephone calls, email messages, and wire transfers.

Nonetheless, Price failed to meet its burden to establish that Majors's communications or activities, individually or cumulatively, were sufficient to demonstrate that it purposefully did business in a Texas forum. *See Michiana*, 168 S.W.3d at 790–92 (rejecting telephone calls as evidence of purposeful availment and explaining the various problems with basing specific personal jurisdiction on communications with a Texas resident); *Gulf Coast Int'l*, 490 S.W.3d at 586 (finding that a nonresident buyer's interaction with a Texas representative did not subject the buyer to Texas jurisdiction, particularly where the buyer never entered Texas to pick up the purchase goods and never sold any goods or services in Texas); *KC Smash 01, LLC v. Gerdes, Hendrichson, Ltd., L.L.P.*, 384 S.W.3d 389, 393 (Tex. App.—Dallas 2012, no pet.) (finding no purposeful availment where nonresident defendant never entered the state, and its contacts with Texas resident were through telephone and email communications and the sending of payments to the plaintiff in Texas); *Olympia Capital Assocs., L.P. v. Jackson,* 247 S.W.3d 399, 418 (Tex. App.—Dallas 2008, no pet.) (holding that neither the existence of a contract between the

20

nonresident defendant and a resident nor engaging in communications related to that contract are sufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant).

Accordingly, we find that the trial court erred by denying Majors's special appearances in each case, and we sustain Appellants' second issue on appeal.

## Conclusion

We conclude that the Store LLCs and Majors each lacked sufficient minimum contacts with Texas to support the exercise of personal jurisdiction over those entities. Accordingly, we reverse the trial courts' orders denying the special appearances and render judgment dismissing all of Price's claims against the Store LLCs and Majors for want of personal jurisdiction.

REVERSED AND RENDERED.

_____
CHARLES KREGER
Justice

Submitted on June 14, 2017
Opinion Delivered February 8, 2018

Before McKeithen, C.J., Kreger and Horton, JJ.

21